# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 24-603

**GULF COAST BRAKE & MOTOR, INC.**

**VERSUS**

**MHWIRTH, INC.**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF IBERIA, NO. C-134714
HONORABLE KEITH R.J. COMEAUX, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**VAN H. KYZAR**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Van H. Kyzar, Ledricka J. Thierry, and Guy E. Bradberry, Judges.

**AFFIRMED.**

**Julius W. Grubbs, Jr.**
**Haik, Minvielle, Grubbs & D'Albor, LLP**
**1101 E. Admiral Doyle Drive, Suite 503**
**Post Office Box 11040**
**New Iberia, LA 70562-1040**
**(337) 365-5486**
**COUNSEL FOR PLAINTIFF/APPELLANT**
**GULF COAST BRAKE & MOTOR, INC.**


**Charles A. Mouton**
**Mahtook & Lafleur, L.L.C.**
**600 Jefferson Street, Suite 1000**
**Post Office Box 3089**
**Lafayette, LA 70502**
**(337) 266-2189**
**COUNSEL FOR DEFENDANT/APPELLEE**
**MHWIRTH, INC.**

**KYZAR, J.**

Plaintiff, Gulf Coast Brake & Motor, Inc., appeals the dismissal of its suit for breach of contract against Defendant, MHWIRTH, Inc.[1], based on the trial court's determination that a forum selection clause in the contract made Texas the more appropriate forum. For the following reasons, we affirm.

**FACTS AND PROCEDURAL HISTORY**

Plaintiff is a Louisiana corporation with a principal place of business in New Iberia, Louisiana that provides manufacturing, upgrades, refurbishment, parts, and repair services for electro-magnetic eddy brake systems used on drilling rigs in the onshore and offshore oil and gas drilling industry. Defendant is an original equipment manufacturer for deep-well drilling rigs, semi-submersible drill ships, and drilling packages offshore with a principal place of business located in Harris County, Texas.

In April of 2017, Defendant had excess inventory for sale. None of Defendant's customers were interested in purchasing the inventory so Defendant's sales manager did a Google search to identify businesses which might be interested in the inventory. The sales manager came across Plaintiff's web site and contacted Plaintiff about the inventory. Plaintiff initially offered $65,000.00 for the inventory, however Defendant declined to sell at that price. Plaintiff contends that a few months later, Defendant again contacted Plaintiff and asked Plaintiff to reconsider the $65,000.00 offer and suggested Plaintiff travel to Defendant's facility in Katy, Texas to inspect the parts, with Defendant further agreeing to provide future business to Plaintiff.

---

[1] According to the sales agreement the correct name of Defendant is MHWirth, Inc.

Plaintiff asserts that during this meeting, Defendant promised that if Plaintiff would purchase the parts for $250,000.00 and also pay an additional $250,000.00 for the purchase of the ATEX certified intellectual property required to perform brake work on Defendant's oversea customers, Defendant would provide Plaintiff with substantial business which would permit Plaintiff to quickly repay the sums paid for the parts and intellectual property. Plaintiff further asserts that based on the assurances of Defendant, Plaintiff signed a Stock Parts and Intellectual Property Sale Agreement in the amount of $500,000.00 for the purchase of parts and intellectual property. The sale agreement provided that the sums due for the sale of the parts and intellectual property were to be paid in installments and that the principals of Plaintiff were to sign as guarantors.

Plaintiff alleges that following the signing of the sale agreement, Defendant provided no meaningful business to Plaintiff, despite repeated requests.[2] Plaintiff made two payments under the Agreement totaling $150,000.00 but refused to make any additional payments. On August 23, 2019, Plaintiff filed a lawsuit in Iberia Parish, Louisiana against Defendant seeking to nullify the sale agreement on the basis of fraud.

In response to this lawsuit, Defendant filed a Declinatory Exception of Lack of Personal Jurisdiction and Improper Venue. Regarding the lack of personal jurisdiction, Defendant asserted that it had no contact with Louisiana, was incorporated in Delaware, had no offices or employees in Louisiana, had no business or bank accounts in Louisiana, and operated its business out of Houston, Texas. Further the agreement between the parties was negotiated and signed in

_____

[2] Section 8.4 of the sales agreement provides, "This Agreement or any price list agreed between the Parties does not create any exclusivity between the Parties nor commitment to purchase minimum quantities, unless expressly agreed in writing."

2

Texas. Therefore, Defendant did not possess the "minimum contacts" necessary to permit jurisdiction over it in a Louisiana court.

Regarding the improper venue argument, Defendant pointed out that the sale agreement had a choice of law and venue provision that provided the following:

> 10.7 Governing Law. This Agreement shall be governed by the laws of the State of Texas, USA without regard to its conflicts-of-laws rules or principles. The parties consent to personal jurisdiction in any action brought in any court, federal or state, within the State of Texas, having subject matter jurisdiction arising under this Agreement. . . .

Following an August 5, 2020 hearing on Defendant's exceptions of lack of personal jurisdiction and improper venue, the trial court denied both exceptions. Defendant filed for supervisory writs regarding the trial court's judgment on the declinatory exceptions. On January 20, 2021, this court denied the writ application stating that no error was found in the trial court's ruling.[3]

On March 11, 2021, Defendant filed a breach of contract lawsuit against Plaintiff and the three principal officers of Plaintiff that signed as guarantors in Harris County, Texas pursuant to the forum selection clause in the sale agreement. Defendant's lawsuit asserted that it was still owed $350,000.00 for the parts and intellectual property it had sold to Plaintiff. In response to the lawsuit, Plaintiff and two of the guarantors[4] filed special appearances in the Texas case, asserting that Texas did not have personal jurisdiction over them. They also filed a Motion to Abate, or stay the case, based on the fact that the Texas claim was identical to the Louisiana claim. Both of the exceptions were rejected by the Texas district court.

---

[3] *Gulf Coast Brake & Motor, Inc. v. MHWIRTH, Inc.*, No. CW 20-467 (La.App. 3 Cir. 1/20/21).

[4] The two guarantors, Michael Nagata and James Edgar, who filed the motions were Louisiana residents. The third guarantor, Jack Van Vleit, was a Texas resident who did not contest Texas' jurisdiction over him.

On July 14, 2022, Plaintiff filed a Chapter 11 petition in the U.S. Bankruptcy Court, Western District of Louisiana, which resulted in a stay of both the Louisiana and Texas proceedings. The Texas proceeding at this time was pending before the court of appeal. Defendant filed a motion to sever Plaintiff's appeal from that of the guarantors to pursue the claims against the guarantors. This motion was granted. The appellate court then proceeded to consider the appeal of the guarantors.

Regarding the appeal of the denial of the motion to abate the case, the Texas court of appeal ruled that it did not have jurisdiction over the guarantors' appeal of this issue as that was an interlocutory order that was not appealable. The appeal court therefore dismissed that portion of the appeal. Regarding the appeal of the personal jurisdiction issue, the appellate court held the guarantors signed the forum selection clause in the agreement and in doing so, consented to personal jurisdiction in Texas and they failed to show that the forum selection clause should not be enforced.[5] Defendant eventually obtained a partial summary judgment against the guarantors for the sums due in the Texas court.[6]

Based on the Texas court of appeal's determination that the forum selection clause was enforceable against the guarantors, Defendant on December 11, 2023, filed an Exception of Res Judicata and Motion to Dismiss regarding the claims Plaintiff had asserted against Defendant in Louisiana. Following a February 2,

---

[5] *Nagata v. MHWirth Inc.*, No. 01-21-00492-CV, 2023 WL 2414880 (Court of Appeals of Texas, Houston,1st Dist., 3/9/23) (unpublished opinion). The Texas supreme court denied the petition to review. *Nagata v. MHWIRTH INC.*, No. 23-0505, 2023 WL 4406896 (Supreme Court of Texas, 8/11/23).

[6] Defendant's claim against Plaintiff was discharged by the Bankruptcy Court. The final decree by the Bankruptcy court was dated January 3, 2023.

2024 hearing, the trial court denied the exception of res judicata, but granted the motion to dismiss, holding that the matter should be litigated in Texas.

It is from this judgment that Plaintiff appeals, asserting the following assignments of error:

> The trial court legally erred by granting the Motion to Dismiss based on the non-exclusive consent to jurisdiction clause contained in the sale agreement between the parties because:
>
> (a) proper venue and jurisdiction in Iberia Parish was already decided by this Court;
>
> (b) the clause is a non-exclusive consent to jurisdiction and is not an exclusive forum selection clause;
>
> (c) there is no legal or factual basis upon which the trial court granted the Motion to Dismiss; and
>
> (d) Appellant now has no other venue in which to pursue its claims against Appellee.

**OPINION**

*Whether the district court's grant of the Motion to Dismiss was improper because the venue and jurisdiction issues had already been decided.*

Initially, Plaintiff asserts that the trial court improperly granted the motion to dismiss because it had already rejected Defendant's exceptions of lack of personal jurisdiction and improper venue following the August 5, 2020 hearing and this court denied writs on this decision. It is Plaintiff's position that this denial of the writ application was "final and definitive and acquires the authority of the thing adjudged" and the trial court had "no jurisdiction, in the sense of power and authority, to modify, revise or reverse the judgment." Plaintiff cites the cases of *Buckbee v. Aweco, Inc*, 626 So.2d 1190 (La.App. 3 Cir. 1993), *writ denied*, 93-2691 (La. 01/13/94), 631 So.2d 1162, and *Alonso v. Admin. Patient's Comp. Fund*,

5

20-211 (La.App. 5 Cir. 12/30/20), 310 So.3d 297, *writ denied*, 21-125 (La. 2/9/21), 310 So.3d 177, as support for its position that the trial court's prior ruling and the writ denial by this court precluded the reconsideration of the issues on the motion to dismiss.

*Buckbee* involved a wrongful death action brought against the former owner of a petroleum heater. The worker's compensation insurance carrier intervened. The trial court granted summary judgment for the defendants and the appellate court affirmed. On the plaintiff's application for certiorari, the supreme court reversed and remanded. On remand, the insurance carrier attempted to reestablish its intervention, however this court noted the insurer had failed to seek its own writ of certiorari to the supreme court following the court of appeal's affirmation of the trial court's judgment. Therefore, the judgment of the court of appeal affirming the denial of recovery to the insurer became final when the insurer failed to seek a review of the judgment by a writ of certiorari to the supreme court.

In *Alonso*, the plaintiff filed a malpractice claim in district court and at the same time also filed a complaint with the Patients Compensation Fund (PCF). The PCF determined there was no malpractice. Subsequently the district court suit was dismissed without prejudice on the grounds of prematurity. The district court's judgment was affirmed on appeal. The plaintiff filed a second claim with the Patients Compensation Fund which was dismissed on an exception of prescription. This judgment was affirmed on appeal. The plaintiff subsequently filed yet another claim with the PCF which was dismissed as being prescribed. On appeal, the appellate court held it lacked subject matter jurisdiction over this appeal because the appellate court had already ruled that the claims of the plaintiff were prescribed, and the plaintiff did not seek a rehearing with the court of appeals nor

6

seek review from the supreme court. Therefore, the prior judgment dismissing the claim as being prescribed was a final judgment and no court had jurisdiction to modify the decision.

In contrast to both the *Buckbee* and *Alonso* cases, there was no final judgment in the present case, but only a denial of the writ application by this court of the jurisdiction and venue exceptions. Contrary to Plaintiff's assertion, this writ denial was not an affirmation of the trial court's denial of the venue issue. In *Nabors Offshore Corp. v. Caterpillar, Inc.*, 16-03 (La.App. 4 Cir. 11/30/16), 204 So.3d 1068, the appellate court denied a writ application declining to exercise its supervisory jurisdiction finding, "no error in the judgment of the trial court". In explaining that this writ ruling did not bar a different conclusion or reconsideration of the same issue argued in the writ application when an appeal is taken from a final judgment, the court stated:

> The trial court apparently read our denial of the writ application as an affirmation of its original decision granting Superior's motion for summary judgment. However, a denial of a writ application is of no precedential value, regardless of the reasons assigned. That is, a writ denial is not precedential for any purpose; it is merely a statement that the court is declining to exercise its supervisory jurisdiction to review the issues addressed at that time. *Lake Air Capital II, LLC v. Perera*, 15–0037, p. 7 (La.App. 4 Cir. 5/13/15), 172 So.3d 84, 88; *Diecidue v. Tittle*, 12–0903, p. 3 n. 2 (La.App. 4 Cir. 8/14/13), 122 So.3d 1143, 1145; *State v. Davis*, 09–0438, p. 19 (La.App. 4 Cir. 1/13/10), 30 So.3d 201, 211; *Arceneaux v. Amstar Corp.*, 06–1592, p. 20 (La. App. 4 Cir. 969 So.2d 755, 771; *State v. Williams*, 00–1725, p. 4 n. 3 (La. 11/28/01), 800 So.2d 790, 795; *St. Tammany Manor, Inc. v. Spartan Building Corp.*, 509 So.2d 424, 428 (La. 1987). In general, the denial of supervisory writs does not bar a different conclusion or reconsideration of the same issue argued in the writ application when an appeal is taken from a final judgment. *Id.*; *Levine v. First Nat. Bank of Commerce*, 06–394, p. 6 n. 4 (La. 12/15/06), 948 So.2d 1051, 1056; *East Baton Rouge Parish School Bd. v Wilson*, 08–0536, p. 10 (La.App. 1 Cir. 6/6/08), 992 So.2d 537, 543; *Diamond B Construction Co., Inc. v. Department of Transp. and Development*, 02–0573, p. 7 (La.App. 1 Cir. 2/14/03), 845 So.2d 429, 434. And the granting of a supervisory writ does not necessarily bar a different conclusion or

reconsideration of the same issue when an appeal is taken, although the granting of a supervisory writ in the appropriate case might have more weight.

In reversing his prior granting of Caterpillar's motion for new trial on the basis of this court's writ denial, the trial judge misinterpreted our denial as an affirmation of his granting of Superior's motion for summary judgment dismissing Caterpillar's claim for contribution against it. Our denial of Caterpillar's writ application was not an affirmation of anything; it was merely a statement that we were declining to exercise our supervisory jurisdiction. Specifically, any language contained in a writ denial purporting to find no error in the trial court's judgment is without effect and had no bearing whatsoever as to the merits, or lack thereof, of Caterpillar's claim against Superior for contribution.

*Id.* at 1071–72.

Therefore, the denial of the writ application by this court did not prevent the finding of a different conclusion by the trial court on the motion to dismiss. Plaintiff's assertion that the trial court's prior denial of the jurisdiction and venue exceptions and the writ denial of that ruling by this court precluded the trial court from ruling that Texas was the more appropriate forum and dismissing this matter is without merit.

*If the forum selection clause was only permissive, was there was a legal factual basis upon which the trial court granted the Motion to Dismiss.*

During the August 5, 2020 hearing on the exceptions of personal jurisdiction and improper venue, there was argument and evidence presented regarding the jurisdiction issue, but there was no consideration of the validity of the forum selection clause in the sale agreement. During a May 10, 2023 hearing on an exception of lis pendens[7], the trial court acknowledged that the only issue litigated

---

[7] On February 9, 2023, Plaintiff filed a Motion for Leave to File First Amending Petition for Breach of Contract, Fraud, Misrepresentation and for Damages which added as plaintiffs in the Louisiana claim the guarantors that were sued in the Texas suit. In response to this filing, Defendant filed a Declinatory Exception of Lis Pendens and Alternatively Motion to Stay asserting that all claims were pending in Texas between the same parties based on the same transaction or occurrence. Following the May 10, 2023 hearing, the trial court granted the

during the earlier August 5, 2020 hearing concerned the personal jurisdiction issue and did not address the venue/choice of forum issue. The following exchange transpired during this May 10, 2023 hearing:

> THE COURT: And the other thing that bothers me, Will, is there was a venue and jurisdiction clause in the contract. It says: We're going to litigate all of this subject to the laws of the State of Texas in federal or State court in Texas.
>
> Now, initially when you filed a lawsuit here, I find [sic] there were minimal contacts that you had the basis to be able to file it here.
>
> I don't think he brought - and he may have, I don't remember that -- that he brought up that the exclusive jurisdiction should be Texas.
>
> I bet he did.
>
> MR. MOUTON: That wasn't a part of the exemption [sic] of jurisdiction.
>
> THE COURT: That's right.
>
> MR. MOUTON: We only litigated personal jurisdiction at that time. Yes, sir.
>
> THE COURT: Personal jurisdiction.
>
> MR. MOUTON: That is correct.
>
> THE COURT: I think that was right.

During the February 2, 2024 hearing on the motion to dismiss, the trial judge specifically addressed the choice of forum clause and the dismissal of the Louisiana case because Texas was the more appropriate forum, stating:

> Well, wouldn't it be more efficient if that proceeding and, look, Gulf Coast signed a contract, the guarantor signed a contract. There was a stipulation of Texas to be the forum. I mean, they could have negotiated that.

---

exception and stayed the proceedings. On May 23, 2023, the guarantors filed for a dismissal of their claims in the Louisiana suit and for a lifting of the stay. The trial court granted the motion and lifted the stay so Plaintiff could proceed with its claims against Defendant while the same claims were being pursued by Defendant against the guarantors and Plaintiff in Texas.

Wouldn't it be judicially efficient if that case is going forward and proceeding to just litigate it there one time?

. . . .

No, I don't think so. I think they're following what the contract says. Y'all didn't follow what the contract said. Although, I initially ordered that you could proceed here because it was a proper forum. And maybe the Texas case had not been filed yet. Or if it was filed, it wasn't proceeded. It hadn't proceeded that far.

. . . .

Yeah, but what we're talking about here is judicial economy and res judicata, the same party, the same litigation. And the thing that sways me, Will, is the choice of forum that the parties agreed to. You were arguing initially, that -- I mean, Chuck was arguing initially that there was no jurisdiction here, because they had agreed to something. And that's not true. They had jurisdiction, but it may not have been the proper best forum. It may have been forum non convenes. You understand?

And comity says sometimes you send it to another place because it's best to litigate it there. All right? They're far enough along in the lawsuit, okay, Gulf Coast basically is going to be dissolved or whatever, okay, based on your representations to me, other than what the shareholders are. And I think it's best that they litigate it in Texas.

In upholding the forum selection clause in the sales agreement, the Texas appellate court stated:

> When parties freely enter into agreements with forum selection clauses, the clause is prima facie valid and enforceable unless the opponent establishes a compelling reason not to enforce it. *See M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972). Enforcement of a forum selection clause is mandatory absent a showing that "enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching."

*Nagata*, 01-21-00492 at *5.

As have the courts in Texas, Louisiana courts have also determined that forum selection clauses in agreements are presumptively valid and enforceable. In

10

*Shelter Mutual Ins. Co. v. Rimkus Consulting Grp. Inc. of Louisiana*, 13-1977, pp.

16–18 (La. 7/1/14), 148 So.3d 871, 881–82, our supreme court stated:

> After examining the above statutes, it is clear the legislature has only declared forum selection clauses unenforceable and against public policy in very limited circumstances. We reject a blanket application of the public policy stated in these statutes to every contractual forum selection clause. The legislature has clearly provided for a more limited application, and has recognized Louisiana's public policy only militates against the use of forum selection clauses in these particular circumstances. The legislature has been unequivocal in these specific contexts to establish that forum selection clauses contravene a strong public policy in Louisiana. Notably, nowhere in these statutes does the legislature cite to Article 44(A) as the source of an already-existing public policy against forum selection clauses.

> Based on our review of the law, we find no reason for Louisiana to deviate from the general rule set forth by the United States Supreme Court that contractual forum selection clauses are *prima facie* valid. We hold that such clauses should be enforced in Louisiana unless the resisting party can "clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching.... [or that] enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision." This court has long recognized that the freedom to contract is an important public policy. We have explained:

>> [P]arties are free to contract for any object that is lawful, possible, and determined or determinable. La. C.C. art.1971. "Freedom of contract" signifies that parties to an agreement have the right and power to construct their own bargains. In a free enterprise system, parties are free to contract except for those instances where the government places restrictions for reasons of public policy. The state may legitimately restrict the parties' right to contract if the proposed bargain is found to have some deleterious effect on the public or to contravene some other matter of public policy.

> The right of parties to freely contract must encompass the correlative power to agree to bring suit under that contract in a particular forum. Upholding the lower courts' rulings would undermine the ability of parties to freely contract and would thereby impair the ability of companies to do business in this state. The parties in this case are commercially sophisticated entities who have a history of conducting business together. We find no prohibition under the

11

facts of this case to prevent the parties from contracting to limit their disputes to any forum of their choosing, and there is nothing in the record which would support a refusal to enforce this particular forum selection clause. As the Court recognized in *Bremen,* the elimination of uncertainties relative to the location of litigation by agreement in advance on an acceptable forum to both parties is an indispensable element of trade, commerce and contracting. Our ruling, holding forum selection clauses *prima facie* valid and generally enforceable, serves these important principles of free enterprise and commerce.

Plaintiff asserts that their allegations of fraud should invalidate the forum selection clause. Neither the Texas nor the Louisiana court found that Plaintiff proved the forum selection provision should be invalidated. In rejecting the guarantor's assertion that the forum selection clause should not be applied, the Texas court of appeals stated:

> Finally, Nagata and Edgar argue that even if the forum selection clause applied to them, enforcement of it would offend due process or be unreasonable and unjust because the case should be abated in favor of the first-filed Louisiana case. See *M/S Bremen*, 407 U.S. at 10 (forum selection clauses "are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances"). However, a court must enforce the forum selection clause unless the resisting party makes a "strong showing" that: (1) its enforcement would be unreasonable and unjust; (2) the clause was the product of fraud or overreaching; (3) enforcement would contravene the strong public policy of the forum where the suit was filed; or (4) trial in the chosen forum would be seriously inconvenient. *See id.* at 15-16; *Rieder*, 603 S.W.3d at 93.

> Edgar and Nagata failed to carry their burden to demonstrate that the forum selection clause should not be enforced. Although they contend that forcing them to defend themselves in Texas would be unreasonable and unjust because this case should have been abated in favor of the Louisiana case, the evidence submitted in connection with their special appearances indicates that they are not parties to the Louisiana action, only Gulf Coast and MHWirth are parties. Further, even if they were parties, the fact that two lawsuits might result from the application of a forum selection clause does not meet the standard for avoiding the forum selection provision. *See In re Int'l Profit Assocs., Inc.,* 274 S.W.3d 672, 680 (Tex. 2009) (orig. proceeding) (per curiam) ("Next, assuming Tropicpak's argument that if the clauses are enforced, it will have to pursue two suits —one against IPA in Illinois and one against Salinas in Texas —is correct, that is not the type of unusual and special circumstances that show litigating

12

in the contracted for forum will be so gravely difficult and inconvenient Tropicpak will be deprived of its day in court."); *In re FC Stone, LLC*, 348 S.W.3d 548, 552 (Tex. App.—Dallas 2011, orig. proceeding) ("However, the fact that Williams might have to pursue two lawsuits —one in Illinois and one in Texas —does not meet the standard for avoiding the forum -selection provision.")

Because the evidence supports the trial court's implied finding that Nagata and Edgar consented to personal jurisdiction in Texas, and they have failed to show that the forum selection clause should not be enforced, we conclude that the trial court did not err in denying their special appearances.

*Nagata*, 01-21-00492 at *7–8.

Plaintiff asserts that the forum selection clause here was a permissive one and not a mandatory one and therefore Texas is not the only forum in which this matter could be heard. In *Town of Homer v. United Healthcare of La.*, 41,512, pp. 5–6 (La.App. 2 Cir. 1/31/07), 948 So.2d 1163, 1167, the court explained, "Forum selection clauses can be either mandatory or permissive. For a forum selection clause to be mandatory, it must clearly establish the parties' intent to make the chosen venue exclusive." Even if the forum selection clause was permissive, the forum selection clause in the sales agreement had already been litigated in Texas and the final judgment which had been rendered by the Texas court was entitled to full faith and credit. The Louisiana court did not make a determination regarding the forum selection clause until the February 2, 2024 hearing on the motion to dismiss. The trial court held that although jurisdiction was appropriate in both Louisiana and Texas, based on the forum selection clause in the sales agreement that Plaintiff voluntarily signed, Texas was the more appropriate forum and therefore the case in Louisiana should be dismissed.

In discussing the recognition a Louisiana court is required to give the judgment or decree of a court of another state, this court in *In re Succession of*

*Aguilera*, 07-77, pp. 3–4 (La.App. 3 Cir. 5/2/07), 956 So.2d 718, 720–21, *writ denied*, 07-1090 (La. 9/14/07), 963 So.2d 998, stated:

> Louisiana courts are required to give full faith and credit to judgments of courts of other states. U.S. Const. art. 4, § 1.
>
> The constitutional command of full faith and credit, as implemented by Congress, requires that "judicial proceedings * * * shall have the same full faith and credit in every court within the United States * * * as they have by law or usage in the courts of such State * * * from which they are taken." Full faith and credit thus generally requires every State to give to a judgment at least the *res judicata* effect which the judgment would be accorded in the State which rendered it. "By the Constitutional provision for full faith and credit, the local doctrines of *res judicata,* speaking generally, become a part of national jurisprudence, and therefore federal questions cognizable here."
>
> *Durfee v. Duke*, 375 U.S. 106, 109, 84 S.Ct. 242, 244, 11 L.Ed.2d 186 (1963) (*quoting Riley v. New York Trust Co.*, 315 U.S. 343, 349, 62 S.Ct. 608, 612, 86 L.Ed. 885 (1942)) (footnote omitted).
>
> Unless the foreign forum lacked jurisdiction over the litigants or the subject matter involved in the controversy, Louisiana courts cannot deny full faith and credit to a foreign judgment. *Ponderosa Assocs., Ltd. v. Verret*, 97–1184 (La.App. 3 Cir. 7/1/98), 714 So.2d 956, *writ denied*, 98–2368 (La.11/20/98), 728 So.2d 1290. One seeking to escape the operation of a judgment rendered in another state has the burden of proof. *Esenwein v. Commonwealth of Penn.*, 325 U.S. 279, 65 S.Ct. 1118, 89 L.Ed. 1608 (1945); *Andries v. Andries*, 398 So.2d 123 (La.App. 3 Cir.1981).

It is clear that the Texas court rendered a final judgment that the forum selection clause was valid and enforceable and because of that, Texas was the proper forum to hear this matter. The Texas court's final judgment is entitled to full faith and credit by Louisiana courts. Louisiana law has established that forum selection clauses are *prima facie* valid and "should be enforced in Louisiana unless the resisting party can clearly show that enforcement would be unreasonable and unjust." *See Shelter Mutual Ins. Co.*, 148 So.3d at 881. The Plaintiff failed to do so.

14

Both the Texas appellate court and the Louisiana trial court determined that the Plaintiff had voluntarily signed the sales agreement that contained the forum selection clause and consented to its jurisdiction provisions. Therefore, there was a factual basis for the trial court to hold that Texas was the more appropriate forum and that the action in Louisiana should be dismissed.

*Whether the district court's grant of the Motion to Dismiss was improper because the [Plaintiff] now has no other venue in which to pursue its claims against [Defendant].*

Plaintiff asserts that when Plaintiff filed for bankruptcy, the claims against it by the Defendant were dismissed and only Defendant's claims against the guarantors were preserved. Since Plaintiff is no longer a party to the Texas lawsuit, it cannot assert any claims against Defendant in Texas because the claims are time barred under Texas law. Therefore, with the dismissal of Plaintiff's claims against Defendant in Louisiana, Plaintiff is precluded from asserting any claims against Defendant.[8]

This same argument was made by Plaintiff and rejected by the trial judge during the hearing on the motion to dismiss. The trial judge stated:

> Okay, had they not availed themselves of bankruptcy, they would be a party. And the forum selection clause has been litigated in Texas and is entitled to full faith and credit. Had Gulf Coast not availed themselves of bankruptcy, they would be a party, and they would have no standing here. Not to say it should be litigated in Texas, okay.

The Plaintiff's assertion that the trial court's dismissal of his claims against Defendant was improper because it left Plaintiff without a forum to proceed against Defendant is without merit.

---

[8] In Plaintiff's brief it is asserted Plaintiff did not assert any claims against Defendant in the Texas suit, however Plaintiff's guarantors did.

## DECREE

For the foregoing reasons, the judgment of the trial court dismissing this case is affirmed. All costs of this appeal are assessed to Plaintiff.

**AFFIRMED.**